IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRANCES BRADEN,

        Plaintiff,

v.                            Civil Action No. 5:13CV107
                                     (STAMP)

CHESAPEAKE APPALACHIA, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REMAND**

I.  Background

This civil action was filed in the Circuit Court of Ohio County, West Virginia. The complaint seeks declaratory or injunctive judgment declaring that a five year term oil and gas lease originally executed on August 23, 2007, between Frances Braden and Great Lakes Energy Partners, LLC, the interests in which were later acquired by the defendant to this action, has expired and no longer binds the plaintiff. The lease covers the plaintiff's 135 acres located in the Triadelphia District of Ohio County, West Virginia. Approximately 63 acres of that 135 acres are located within the Timmy Minch West Unit which the defendant claims it has started development and extraction activities on, although not on the 63 acres of the plaintiff's property. The declaration is sought based upon allegations that the lease has lapsed because the lease was not extended after its expiration date of August 23, 2011 and the defendant has not drilled on the plaintiff's property nor extracted any materials from the

plaintiff's property. The plaintiff seeks a declaration that the lease is expired, that no money is due the defendant from the plaintiff, and that no money is due the plaintiff from the defendant.

The defendant removed this case to this Court on the basis of diversity jurisdiction, claiming that the parties are citizens of different states and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

The plaintiff then filed a motion to remand, which claims that diversity jurisdiction is lacking because the defendant has failed to demonstrate that the amount in controversy exceeds the jurisdictional amount of $75,000.00. The plaintiff claims that because she is seeking declaratory or injunctive relief, the case has no value to either party other than the declaration -- thus, the cost or gain to both parties is zero. Further, the plaintiff asserts that if this Court were to find that there is some monetary value attached to this action, the calculations offered by the defendant are too speculative.

The parties have fully briefed this motion, and it is now ripe for the consideration of this Court. For the reasons that follow, this Court must deny the plaintiff's motion to remand.

## II. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal

courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. <u>See</u> <u>Mulcahey v. Columbia Organic Chems. Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. <u>Id.</u>

Although courts strictly construe the statute granting removal jurisdiction, <u>Doe v. Allied Signal, Inc</u>., 985 F.2d 908, 911 (7th Cir. 1993), the court is not required "to leave common sense behind" when determining the amount in controversy. <u>Mullens v. Harry's Mobile Homes</u>, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). When the amount in controversy is not apparent on the face of the plaintiff's complaint, the federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record. 14C Charles Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3725 at 73 (3d ed. 1998). However, the court is limited to examining only evidence that was available at the moment the petition for removal was filed. <u>Chase v. Shop 'N Save Warehouse Foods</u>, 110 F.3d 424, 428 (7th Cir. 1997).

III.  Discussion

In her motion to remand, the plaintiff asserts that this action must be remanded to state court because the defendant has failed to prove that the amount in controversy in this case is in excess of $75,000.00, exclusive of interest and costs. This Court does not agree.

The burden of establishing that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, rests with the party seeking removal. Mulcahey, 29 F.3d at 151. This Court has consistently applied the "preponderance of evidence" standard to determine whether a defendant has met its burden of proving the amount in controversy. When no specific amount of damages is set forth in the complaint, the defendant bears the burden of proving that the claim meets the requisite jurisdictional amount. Mullins, 861 F. Supp. at 23. In such circumstances, the Court may consider the entire record before it and may conduct its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum. Id. Further, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 492 (S.D. W. Va. 2001) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)).

After carefully reviewing the complaint and the parties' memoranda and accompanying affidavits, this Court concludes that

the defendant has satisfied its burden of proof and that the value of the subject oil and gas lease may exceed $75,000.00. First, to disperse with the plaintiff's claim that the current action is worth zero to both parties because it is a declaratory or injunctive relief action, this Court reiterates that in a declaratory or injunctive relief action the amount in controversy is measured by "the value of the object of the litigation." McCoy v. Erie Ins. Co., 147 F. Supp. 2d at 492 (quoting Hunt v. Washington State Apple Adver. Com'n, 432 U.S. 333, 347 (1977)). Thus, because the object of the litigation is the lease, the value of the litigation will be determined by the value of the lease.

The plaintiff also contends that even if the amount in controversy is not zero, the defendant has not proven that the cost of the lease will exceed $75,000.00. To the contrary, the defendant has shown that it is more likely than not that the cost of the subject oil and gas lease at this time would exceed $75,000.00 by including an affidavit from a landman Brian C. Lohoff, who is responsible for land and lease acquisition in the subject area of Ohio County. Mr. Lohoff attests that he is familiar with the subject lease, as well as the land which the lease concerns -- 135 acres of land in the Triadelphia District of Ohio County, West Virginia, and with comparable oil and gas leases in Ohio County, West Virginia. He further avers that he is familiar with the current market prices and that the cost to acquire comparable leases to the subject lease would exceed

$75,000.00. The cost would be at the low end $2,132.97 per acre or $2,209.85 per acre at the high end. He further attests that 63.292838 acres of the Timmy Minch West Unit, which is approximately 588 acres, is comprised of the plaintiff's property.

The plaintiff does not contest the statements of Mr. Lohoff, but rather claims that his calculations are speculative because they are not based on data that specifically takes into account the plaintiff's property value. Further, the plaintiff argues that there are too many variables that could affect the value of the lease: (1) whether the lease were to have the same terms as it does now, (2) whether the two parties re-negotiated the lease, and (3) how much the resources extracted are actually worth because none have been extracted from plaintiff's property to date.

This Court does not believe that Mr. Lohoff's calculations are speculative. Obviously, whether or not the defendant could reacquire the lease in the same form, with the same terms, is out of Mr. Lohoff's control, and if it is not able to be reacquired with the same terms, then the cost would change. Mr. Lohoff's inability to be sure that the lease would be reacquired in the same form should this lawsuit deem the current lease unenforceable does not change the value of the lease itself, the subject of the lawsuit.

The inquiry in determining the value of a declaratory judgment action, as explained above, is the "value of the object of the litigation," not what the actual cost to any certain party may be

as a result of the lawsuit. <u>McCoy v. Erie Ins. Co.</u>, 147 F. Supp. 2d at 492 (S.D. W. Va. 2001) (internal citation omitted). In assessing the value of the object of the litigation, the United States Court of Appeals for the Fourth Circuit looks at the pecuniary result to either party which a judgment would produce. <u>Dixon v. Edwards</u>, 290 F.3d 699, 710 (4th Cir. 2002) ("[T]he test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'") (quoting <u>Gov't Emp. Ins. Co. v. Lally</u>, 327 F.2d 568, 569 (4th Cir. 1964)).

This Court further disagrees with the plaintiff's contention that because Mr. Lohoff did not include actual numbers with regard to the plaintiff's property specifically, his statements of amount in controversy are "speculation." Because he is the landman responsible for land and lease acquisitions in the Ohio County area, Mr. Lohoff has not only reviewed the lease that is the subject of this lawsuit and the plaintiff's property that is located in the Timmy Minch West Unit, but he is also familiar with current market prices in the relevant area. He is also able to include exact prices, and his expertise in the area makes his deposition testimony, especially when not factually contested by the plaintiff with any contradicting evidence, sufficient to support a conclusion that the market value of acquisition of the plaintiff's lease exceeds $75,000.00. Based on Mr. Lohoff's reported market prices, the spectrum for damages in this action

would range from $134,995.67 (if the only property included in the lease was the plaintiff's property in the Timmy Minch West Unit) to $298,329.75 (if taking into account all of the plaintiff's property); both figures are well above the required amount in controversy.

Finally, the parties disagree on whether or not this Court's holdings in <u>Kahle v. Chesapeake Energy Corp.</u>, 5:11CV24, 2011 WL 2182112 (N.D. W. Va. June 3, 2011), should be applied in this case. The plaintiff contends that it does not apply because there are distinguishable facts between the two cases: (1) in <u>Kahle</u>, the lease had not expired at the time of the litigation, in this case it has; and (2) in <u>Kahle</u>, the plaintiff was attempting to remove the defendant from an active drilling site, in this case, the defendant has not been actively drilling on Braden's property. <u>Kahle</u>, 2011 WL at *1. Further, the plaintiff argues that this Court should apply the principles from a slip and fall case, <u>Nagel v. Wal-Mart Stores, Inc.</u>, 319 F. Supp. 2d 981 (D.N.D. 2004), to this case. Finally, the plaintiff argues that this Court should distinguish the facts of a Sixth Circuit case cited by the defendant, <u>Northup Properties, Inc. v. Chesapeake Appalachia</u>, 567 F.3d 767 (6th Cir. 2009), because the Fourth Circuit does not have case law that is factually parallel to this case.

This Court notes that it is able to apply Fourth Circuit case law, precedent, and principles to this action and can do so without reference to its particular reasoning in <u>Kahle</u>, as can be seen in

the analysis above. However, this Court will review the plaintiff's contentions that Nagel should be applied to this case and that Northup is distinguishable from this case. To the contrary, however, this Court finds that the plaintiff's contentions do not change the outcome and that the motion to remand should still be denied.

In completing a valuation of the amount in controversy, "the court considers a number of factors, including the plaintiff's injuries, amounts awarded in similar cases, expenses incurred to date, and settlement demands . . . ." Scarlato v. Ferrell, 826 F. Supp. 2d 960, 962 (S.D. W. Va. 2011). In Nagel, however, the District of North Dakota found that the cases cited by the defendant were not comparative to the slip and fall case at hand. Nagel, 319 F. Supp. 2d at 985. In that case, the plaintiff had been injured during a slip and fall at the defendant's store. Id. at 984-85. Thereafter, her counsel had sent a letter to the defendant stating that she may have had vision problems because of the fall. Id. The defendant cited several slip and fall cases that had verdicts exceeding $75,000.00 where the plaintiff had at least one eye injured. Id. at 984. The plaintiff in Nagel, however, had previous vision problems before the slip and fall because of issues with diabetes. Id. The court thus reasoned that the defendant's cases were not comparable because none of them had a plaintiff who had not specifically claimed vision issues in her

complaint and also had vision problems preceding the slip and fall. Id. at 984-85.

The plaintiff argues that comparing other acres and wells in Ohio County is the same practice in which the defendant in Nagel was taking part. The two comparisons, however, are drastically different. In this case, the defendant has already started drilling and started well work on the Timmy Minch West Unit in which part of the plaintiff's property is located. The defendant also cites specific prices for Ohio County generally and the Triadelphia district specifically. Additionally, contrary to a slip and fall case, which involves questions of fact for a fact finder, this case is a declaratory and injunctive relief case (as the plaintiff states), and thus will only involve questions of law. Thus, the variables that were present in Nagel that could make a determination fluctuating depending on what a plaintiff's pre-existing conditions were at the time of the accident, are not present here. Further, although it is true that the production value of the plaintiff's property could turn out to be less than other areas in the Triadelphia district, the defendant has shown that based on where the property is situated, the cost of losing the lease would meet the jurisdictional minimum, even if it were to only maintain the piece of property within the Timmy Minch West Unit. The defendant only has the burden of showing that it is more likely than not that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, which it has done.

Finally, in Northup, the plaintiff argued that the defendant's proffer of a petroleum engineer's affidavit was not enough to meet the defendant's burden in proving the amount in controversy. Northup, 567 F.3d at 769-770. In that case, the affidavit offered evidence of future cash flows, the discounted present value of the well on the plaintiff's property, the value of the undeveloped acreage, and the initial cost of drilling the well. Id. at 769. The Sixth Circuit noted that in evaluating the amount in controversy in oil and gas lease cases, several courts applied similar metrics as those used by the engineer: "(1) the tract's fair market value, (2) both fair market value and net value of the mineral interest, and (3) the diminished value of the land burdened with an oil-and-gas lease or the increased value without the lease." Id. at 770 (citations omitted). The court noted that "accounting for mineral interest is not an exact science . . . [but] that the speculative character of such interests 'does not defeat the existence of a 'market value' in mineral rights.'" Id. at 771 (citation omitted). Thus, the court found that the engineer's affidavit was sufficient to show the amount in controversy. Id.

The plaintiff argues that the Northup case is distinct from this case in that the defendant in that case offered much more in its analysis of the cost of the lease. This distinction, however, fails to take into account the different factual backgrounds of the two cases. In Northup, the defendant had already drilled on the

site and had found that the property was not oil or gas bearing (at least where it had drilled).  In this case, the defendant has only begun to conduct activity on the Timmy Minch West Unit and has not drilled on the plaintiff's property.  Mr. Lohoff is offering the average per-acre value of comparable oil and gas lease in the Triadelphia District in Ohio County.  An average likely takes into account properties that have been drilled and those that have not. In <u>Northup</u>, the defendant had already drilled three wells on the plaintiff's property and none had yielded oil or gas.  However, the defendant was still able to show that the cost of the lease would exceed $75,000.00.  <u>Id.</u> at 769.  Here, such a fact is not present, but, the defendant does state that it has realized some production from the Timmy Minch West Unit which resulted in royalties being issued.  <u>See</u> ECF Nos. 9-2 *4; 9-3.  Thus, in this case, although the affidavits offer different valuation points, Mr. Lohoff's affidavit is sufficient based on the specific facts underlying this cause of action.  Accordingly, the plaintiff's motion to remand must be denied.

IV.  <u>Conclusion</u>

For the reasons stated above, the plaintiff's motion to remand is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     October 9, 2013

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE