IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRANCES BRADEN,

    Plaintiff,

v.                                              Civil Action No. 5:13CV107
                                                        (STAMP)
CHESAPEAKE APPALACHIA, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.  Procedural History

The plaintiff, Frances Braden, filed this action in the Circuit Court of Ohio County, West Virginia. The defendant, Chesapeake Appalachia, Inc. ("Chesapeake"), later removed the action to this Court. The plaintiff's complaint states that the plaintiff and Great Lakes Energy Partners executed an oil, gas, and coal bed methane lease on August 23, 2007 which was a five year term lease set to expire on August 23, 2012. The complaint further alleges that Chesapeake acquired all rights, title, and interest in that lease in 2011 and has attempted multiple times to extend the lease for one year. The plaintiff states that she did not extend the lease at any time and that it has expired. The plaintiff frames her complaint as follows: (1) no money is due Chesapeake from the plaintiff, (2) no money is due the plaintiff from Chesapeake, and (3) the August 23, 2007 lease has expired. The plaintiff requests injunctive and declaratory relief. Chesapeake

has filed a counter-claim for declaratory judgment in response. Chesapeake argues that the lease was extended even though it has not drilled or extracted anything from the plaintiff's property.

Both parties have now filed motions for summary judgment. Those motions are fully briefed and ripe for review.

## II. Facts

### A. Plaintiff's Motion for Summary Judgment

In her motion for summary judgment, the plaintiff first states that the contract at issue is not ambiguous and that this Court may decide this action based on the parties' motions for summary judgment. The plaintiff argues that there was no activity on the plaintiff's property during the five year lease term and thus the lease expired on August 23, 2012. Further, the plaintiff contends that Chesapeake attempted to extend the lease several times and that the plaintiff refused all attempts. One of these attempts included a separate lease for three acres not included in the 135-acre lease at issue, which the plaintiff asserts was an attempt to extend the 135 acre lease in a backhanded manner. Thereafter, the plaintiff asserts that Chesapeake amended the Timmy Minch West Unit ("TMWU"), a pooled unit of different properties, to include the plaintiff's property so that Chesapeake could use the activity occurring on that unit to extend the Braden lease. This was done on August 14, 2012 but the plaintiff argues that the addition of the plaintiff's property was pretextual and was not enough to

2

extend the lease because there was no drilling activity whatsoever on the plaintiff's property.

In response, Chesapeake contends that physical activity did not need to occur on the plaintiff's property. Rather, pursuant to the parties' contract, the property only needed to be included in a pooling unit whereon activity was occurring. Thus, the inclusion of the property in the TMWU was enough to extend the lease. Further, Chesapeake asserts that it also had taken steps to prepare the plaintiff's property for drilling and that this also extended the lease. Additionally, Chesapeake contends that it attempted to extend the lease because it wanted more time to plan how the plaintiff's property would be used and within what unit it should be encompassed. Chesapeake also argues that the three acre lease was not offered in order to include the August 2007 lease which was set to expire because the "contiguous land" provision cited by the plaintiff is simply a cover-all provision and not meant to include any other property. Finally, Chesapeake asserts that including the plaintiff's property in the TMWU so closely to the expiration date does not prove any ill intention by Chesapeake and further, courts have upheld such moves to extend the lease taken only three days prior to the expiration date.

In reply, the plaintiff asserts that the two cases cited by Chesapeake do not apply to this case. First, the plaintiff argues that <u>Fleming Oil & Gas co. v. South Penn Oil Co.</u>, 17 S.E. 203, 207

(W. Va. 1893), does not apply because no physical activity took place on the plaintiff's property itself, only on the TMWU. Second, the plaintiff contends that Henry v. Chesapeake Appalachia, L.L.C., 738 F.3d 909, 910-911 (6th Cir. 2014), is not applicable because its facts are far too distinguishable from this case because of the pretextual nature of activities by Chesapeake and there were no physical activities taken on the property prior to it being joined with the TMWU. The plaintiff further argues that Paragraph 10 of the underlying lease, the pooling clause, is vague and ambiguous because it does not specify any limitation on the unitization of the plaintiff's property and thus this clause should be construed in favor of the plaintiff. Otherwise, the plaintiff reiterates arguments made in her initial memorandum.

B. <u>Defendant's Motion for Summary Judgment</u>

Chesapeake makes similar arguments in its motion for summary judgment as in its response to the plaintiff's motion for summary judgment. However, Chesapeake provides more detail as to why this case is similar to <u>Fleming</u>, a West Virginia Supreme Court case, and <u>Henry</u>, a United States Court of Appeals for the Sixth Circuit case. Chesapeake argues that pursuant to <u>Fleming</u>, it was only required to make preparations for drilling in order to extend the lease. Further, Chesapeake contends that pursuant to <u>Henry</u>, the joining of the plaintiff's property in the TMWU, along with Chesapeake's other preparations, provided enough to extend the lease. Finally,

4

Chesapeake asserts that even if the pooling of the property is the only activity considered, Chesapeake extended the lease because a majority of jurisdictions have held that such action constitutes an extension.

In response, the plaintiff reiterates her arguments that Chesapeake has only "artificially" extended the lease through its backhanded tactics and thus the lease expired. The only argument that is added by the plaintiff is that the Lohoff affidavit (Ex. 3 of the response) should not be considered by this Court because it misstates facts, is contradictory, and provides legal conclusions that are not allowed to be made by a witness but rather can only be made by this Court.

In reply, Chesapeake reiterates its argument as to how the lease was extended. Further, Chesapeake states that the e-mail that the plaintiff refers to in her briefing that shows there were ill intentions in joining the plaintiff's property into the TMWU is misconstrued by the plaintiff as that e-mail was sent in reference to issues that Chesapeake was having with another unit, the Oglebay Park 3 Unit. Additionally, Chesapeake contends that the Lohoff affidavit is factually based and should not be excluded from consideration. Finally, Chesapeake argues that because the underlying issue does not deal with contract formation, state of mind is not an element that needs to be considered in this action.

For the reasons that follow, this Court finds that the plaintiff's motion for summary judgment should be DENIED and the defendant's motion for summary judgment should be GRANTED.

III. Applicable Law

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is

perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

A. Ambiguity of the Contract

This case was removed to this Court pursuant to diversity jurisdiction. Accordingly, West Virginia law must be applied to determine how this Court should interpret the contract and whether or not it may grant a motion for summary judgment based on the application of paragraphs two and ten of the underlying contract. Harbor Court Assocs. v. Leo A. Daly Co., 179 F.3d 147, 153 (4th Cir. 1999) ("In this appeal, we are sitting in diversity; therefore, our task "is to 'rule upon state law as it exists and not to surmise or suggest its expansion.'") (quoting Burris Chemical, Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993)). Under West Virginia law, the trial court determines whether "the terms of an integrated agreement are unambiguous and, if so, [ ] construe[s] the contract according to its plain meaning. In this sense, questions about the meaning of contractual provisions are questions of law." Fraternal Order of Police, Lodge No. 69 v. City

of Fairmont, 468 S.E.2d 712, 715 (W. Va. 1996). The West Virginia Supreme Court, however, couched that finding as follows:

> However, when a trial court's answers rest not on plain meaning but on differential findings by a trier of fact, derived from extrinsic evidence as to the parties' intent with regard to an uncertain contractual provision, [those questions are left for the jury]. The same standard pertains whenever a trial court decides factual matters that are essential to ascertaining the parties' rights in a particular situation (though not dependent on the meaning of the contractual terms per se ). In these types of cases, the issues are ordinarily fact-dominated rather than law-dominated . . . .

Id. (citation omitted).

If the trial court finds that the contract is ambiguous, "the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent." Id. at 716, fn. 7. "Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations . . . 'A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction.'" Id. at 716 (citation omitted). "'The mere fact that parties do not agree to

8

the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court.'" Id. at 717-18 (citing Syl. pt. 1, Berkeley Co. Pub. Ser. Dist. v. Vitro Corp., 162 S.E.2d 189 (W. Va. 1968)).

The parties disagree as to the implications of two paragraphs in the underlying lease, Paragraph 2 and Paragraph 10. Paragraph 2 states that:

> This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for a term of five (5) years and so much longer thereafter as oil, gas, coalbed methane gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee, or as the premises shall be operated by the Lessee in the search for oil, gas and/or coalbed methane gas and as provided in Paragraph 7 following.[1]

ECF No. 54-3. Further, Paragraph 10 holds that:

> Lessor hereby grants to the Lessee the right at any time to consolidate the leased premises or any part thereof or strata therein with other lands to form an oil, gas and/or coalbed methane gas development union . . . but the Lessee shall in no event be required to drill more than one well on such unit . . . Any well drilled on said development unit whether or not located on the leased premises, shall nevertheless be deemed to be located upon the leased premises within the meaning and for the provisions and covenants of this lease to the same effect as if all the lands comprising said unit were described in and subject to this lease . . . .

---

[1] Paragraph 7 is not applicable in this action as it pertains to a situation in which a well was drilled on the plaintiff's property itself. In this case, no well has been drilled on the plaintiff's property, but rather wells have been drilled on the TMWU.

9

_Id._ Pursuant to Paragraph 2, the lease was set to expire on August 23, 2012. The plaintiff was notified of the pooling of her property into the TMWU on August 14, 2012.

Chesapeake argues that pursuant to Paragraph 10, it fulfilled the requirements of Paragraph 2 within the expiration date because it pooled the plaintiff's property into the TMWU nine days before expiration. Further, Chesapeake contends that it had undertaken exploratory activity on the TMWU to prepare it for drilling and had drilled a well on the TMWU. The plaintiff contends that the lease expired because (1) the current wells on the TMWU cannot produce gas from the plaintiff's property; (2) no wells have been drilled on the plaintiff's property or any other significant explorative activity; (3) Paragraph 10 is vague and ambiguous because it does not specify any limitation on unitization of plaintiff's property and thus provides "boundless authority" to Chesapeake; and (4) because Paragraph 10 is ambiguous, it should be read in favor of the plaintiff which would require a reading of Paragraph 2 in the plaintiff's favor.

The plaintiff appears to be arguing that Paragraph 10 is one sided in that it provides Chesapeake with a way to extend the lease without actually getting an extension from the plaintiff herself or drilling a well on the plaintiff's property. This argument, however, is not persuasive as the plaintiff agreed to Paragraph 10

and therefore agreed to its implications. Those implications include different ways for Chesapeake to extend the lease.

The plaintiff's argument is not an ambiguity argument per se, as the plaintiff has not set forth a reading of Paragraph 10 different from that of Chesapeake. Rather, it appears that the plaintiff is arguing that Paragraph 10 is unfair as it provides too much authority to Chesapeake to unitize the plaintiff's property and that the plaintiff had not bargained for such a wide reaching scope of authority. "The court is charged with resolving the question of whether a contract provision was bargained for and valid." Brown v. Genesis Healthcare Corp., 729 S.E.2d 217, 227 (W. Va. 2012). However, the plaintiff has not set forth any inadequacies she faced in entering the lease that would have provided grounds for a finding that the contract was not valid when it was made. Id.[2] Thus, the plaintiff's arguments as to motive on the part of Chesapeake are not applicable as the plaintiff has not provided any reason why the contract was incorrectly formed.

Accordingly, this Court finds that the language in the lease is not ambiguous but rather that the parties only disagree as to the implications of Paragraph 10 in relation to the extension

---

[2]"These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Id.

11

language in Paragraph 2. The language of Paragraph 10 itself is not ambiguous and is in Chesapeake's favor: "Any well drilled on said development unit whether or not located on the leased premises, shall nevertheless be deemed to be located upon the leased premises within the meaning and for the provisions and covenants of this lease to the same effect as if all the lands comprising said unit were described in and subject to this lease . . . ." ECF No. 54-3. The plain meaning of this section of Paragraph 10 provided Chesapeake with an alternative way of extending the lease passed the 5 years described in Paragraph 2. Paragraph 10 specifically states that Chesapeake could pool the plaintiff's property into a development unit and that any well drilled on that unit would be "deemed to be located upon the leased premises within the meaning and for the provisions and covenants of this lease . . . ." Id. Accordingly, if Chesapeake properly pooled the plaintiff's property into the TMWU, the plaintiff's lease was extended past the August 23, 2012 expiration date.

B. <u>Actions Taken by Chesapeake in Extending the Lease</u>

The parties agree that the plaintiff's property was pooled with the TMWU before the expiration of the lease and that the plaintiff was notified of that development. Further, the parties agree that a well was already drilled on the TMWU when the plaintiff's property was pooled into that unit and that oil and gas exploration continued thereafter. The parties do not agree,

12

however, whether the actions taken by Chesapeake were enough to fulfill Paragraph 10, referenced above.

    1.   <u>Activity on the Plaintiff's Property</u>

The plaintiff argues that Chesapeake's activities on the TMWU and the plaintiff's property were not enough to fulfill the requirements of Paragraph 10. This Court finds, however, that the actions by Chesapeake did meet the requirements set out in Paragraph 10.

A lease such as the one in this action may be extended "no matter how slight may have been the commencement of any portion of the work which was a necessary and indispensable part of the work required . . ." <u>Fleming</u>, 17 S.E. at 207. In <u>Fleming</u>, the West Virginia Supreme Court held that preparatory activities were sufficient to carry a least into a new term even though a well had not been drilled on the property in question. <u>Id.</u> at 206.

Similarly, in this action, Chesapeake had prepared the TMWU for drilling before the expiration of the plaintiff's lease. Before expiration of the plaintiff's lease, Chesapeake had constructed a well pad and an access road on the TMWU, had submitted permit applications for those wells to the West Virginia Department of Environmental Protection, had obtained permits were issued for those wells, and had commenced drilling of the wells. Pursuant to Paragraph 10, when the plaintiff's property was pooled in the TMWU, any action taken by Chesapeake on the TMWU as a whole

13

was considered activity that took place on the plaintiff's property itself. Thus, Chesapeake had undertaken preparatory activities for drilling operations "no matter how slight." Id. at 207.

2. Chesapeake's Motive

The plaintiff argues that Chesapeake had backhandedly attempted to extend the lease through a one year extension and through an attempt to obtain a 3.5 acre tract from the plaintiff. When those attempts failed, the plaintiff contends that Chesapeake pretextually joined the plaintiff's property to the TMWU because Chesapeake knew it could not extend the lease otherwise.

This Court finds that the plaintiff is most likely correct that Chesapeake's motive in joining the plaintiff's property to the TMWU was to extend the lease. However, the plaintiff has not provided any reason why such a motive affects the validity of Paragraph 10. Again, the plaintiff has not cited any inadequacies in the formation of the contract that would have invalidated the lease.

Further, a pooling arrangement has been upheld even when a lessee triggers such a provision three days before the lease is set to expire. Henry, 738 F.3d at 910-911. In Henry, the United States Court of Appeals for the Sixth Circuit upheld a provision in a lease which allowed the pooling of the plaintiff's property to trigger an extension. Id. at 913. The court found that the defendant's filing of a declaration and notice of pooled unit

14

("DUP"), along with the defendant's commencement of operations on the pooled unit, constituted operations in pursuit of the production of gas. Id. Additionally, the Court held that the lease had been properly extended because the DUP was filed on October 14, 2011 and the lease was not set to expire until October 17, 2011. Id.

The facts of Henry almost precisely mirror the facts in this action. In this action, Chesapeake pooled the plaintiff's property into a unit on which Chesapeake had commenced operations. Further, Chesapeake did so nine days prior to the expiration of the lease. The motive for doing so and Chesapeake's prior failures at extension are inconsequential as the plaintiff has not sought invalidation of the contract itself (formation) and has not provided any legal support for this Court's consideration of motive. Considering the terms of Paragraph 10, Chesapeake was within the terms of the lease and successfully extended the lease when it pooled the plaintiff's property into the TMWU before August 23, 2012. Accordingly, there are no genuine issues of material fact exist.

C. Request for Oral Argument

The plaintiff made a request for oral argument in her response to the defendant's motion for summary judgment. Given the briefing of the parties and the underlying issues, this Court finds that it would not be beneficial to hold oral argument on the parties'

motions for summary judgment.  As such, the plaintiff's request for oral argument is denied.

## V. Conclusion

Based on the analysis above, this Court finds that the plaintiff's motion for summary judgment is DENIED.  Further, the defendant's motion for summary judgment is GRANTED.  It is ORDERED that this case be DISMISSED WITH PREJUDICE and STRICKEN from the active docket of this Court.

Accordingly, all pending motions are hereby DENIED AS MOOT.  Further, it is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Additionally, pursuant to the relief requested by Chesapeake in its counterclaim, this Court finds that:

1. Prior to the expiration of the primary term of the lease, Chesapeake created a pooled unit, the Timmy Minch West Unit, that included the plaintiff's lease;

2. Prior to the expiration of the primary term of the lease, Chesapeake drilled the OH1 1H Well on the Timmy Minch West Unit;

3. Prior to the expiration of the primary term of the lease, Chesapeake engaged in other activities in furtherance of the search for oil and gas in the pooled unit that contained the plaintiff's lease;

4.   Operations in the search for oil and gas in the Timmy Minch West Unit are deemed to be operations in the search for oil and gas on the plaintiff's lease;

5.   Prior to the expiration of the primary term of the lease, Chesapeake actively engaged in the search for oil or gas sufficient to extend the term of the lease into its secondary term; and

6.   Chesapeake has the right to continue its operations to further drill and develop oil and gas on the plaintiff's lease and leases pooled therewith and to exercise all other express and implied rights under the lease.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    November 21, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE